IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

ROSETTA BRANCH-HAINES,

     Plaintiff,

v.                                 CASE NO. 1:18-cv-229-AW-GRJ

EAST COAST WAFFLES, INC.,

     Defendant.

_____/

## REPORT AND RECOMMENDATION

Pending before the Court is Defendant East Coast Waffles, Inc.'s

Renewed Motion to Dismiss for Fraud or, Alternatively, Motion for

Sanctions.  ECF No. 92.  The district court referred this motion to the

undersigned to conduct any necessary proceedings and to submit this

report and recommendation.  ECF No. 94.  Plaintiff, proceeding *pro se*, has

filed a brief response in opposition to ECW's motion.  ECF No. 96.  The

instant motion is, therefore, ripe for consideration.

ECW's motion is filled to the brim with troubling allegations

concerning Plaintiff's conduct during this litigation thus far.  ECW says that

Plaintiff blatantly withheld information in discovery relevant to her supposed

physical injury (including a nearly contemporaneous work-related injury)

and misrepresented the extent of her financial damages (by seeking double

recovery in this case and from her worker's compensation carrier for

medical bills and lost wages).  ECW also claims that Plaintiff interfered with

the service of a discovery subpoena on her employer.  Even assuming

these contentions are true, they do not meet the exceptionally high burden

to warrant dismissal of Plaintiff's case or lesser sanctions under this Court's

inherent authority or Federal Rule of Civil Procedure 41(b).  Accordingly,

and for the reasons discussed below, it is respectfully **RECOMMENDED**

that ECW's motion to dismiss or for sanctions should be **DENIED**.

## I. BACKGROUND[1]

This is a negligence case.  Plaintiff alleges in her Second Amended

Complaint that on September 27, 2015, she was a customer at ECW's

Waffle House restaurant in Gainesville, Fla.  ECF No. 58 at 2.  When she

---

[1] This section summarizes the relevant allegations in the record before the Court (which includes the Plaintiff's Second Amended Complaint, ECW's motion to dismiss, and the accompanying exhibits) *without making explicit factual findings*.  Having considered the parties' filings, the Court concludes that an evidentiary hearing to resolve any factual disputes is unnecessary for two reasons.  First, Plaintiff was provided notice and the opportunity to respond to the instant motion, but she did not in her terse response, contest any of the facts alleged by ECW other than by offering the self-serving, unsubstantiated statement that she has been "consistently honest [and] truthful[,]"  ECF No. 96 at 1.  *See Watkins v. Dubreuil*, 820 F. App'x 940, 948 (11th Cir. 2020) (affirming the district court's decision not to hold an evidentiary hearing before imposing sanctions because the sanctioned party was "given notice and an opportunity to contest the court's rationale for imposing sanctions, and the decision did not depend on the resolution of material factual disputes or credibility determinations" (citing *McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1312–14 (11th Cir. 1998))); *Cook v. American S.S. Co.*, 134 F.3d 771, 774–75 (6th Cir. 1998) (collecting cases in support of the principle that a full evidentiary hearing is not required before imposing sanctions).  Second, ECW's allegations against Plaintiff, even if proven at an evidentiary hearing, fail to justify dismissal or lesser sanctions.

retreated to the restroom from the dining room to wash her hands, "the entire sink collapsed and fell from the wall, striking [her] and causing substantial and permanent bodily injuries and damages." *Id.*

More specifically, Plaintiff testified in her deposition (taken on March 14, 2019) that she went to eat at the Waffle House with her sister just after midnight on September 27. Prior to eating she went to wash her hands in the women's restroom, and when she attempted to retrieve soap from a dispenser attached to the sink "the whole thing fell." ECF No. 90-1 at 33, 36–44. Plaintiff screamed when the mouth of the faucet "came down on [her] arm," *id.* at 44, and, soon after, she heard banging on the restroom door, *id.* at 46. Plaintiff opened the door to see her sister, the waitress, and the cook standing within an arm's length. *Id.* The waitress offered Plaintiff ice to soothe her injury (which Plaintiff accepted), and Plaintiff asked for an "incident report." *Id.* at 46–47. Plaintiff attempted to eat her meal but was "in too much pain" to finish, so the restaurant packed her and her sister's meals in to-go containers to take with them. *Id.* at 52–53. Plaintiff went home, she did not sleep, and she could not work the next day because of the pain in her arm. *Id.* at 55.

Plaintiff, represented by counsel, initiated this case in state court on October 4, 2018, and it was removed to this Court by ECW on November

3

14, 2018. ECF No. 1. Then the parties commenced with discovery. As mentioned above, Plaintiff sat for a comprehensive deposition conducted by ECW's counsel. ECF No. 90-1. The deposition spanned several topics, including Plaintiff's recollection of the incident at Waffle House, her medical history and bills, and her employment.

Relevant here, Plaintiff testified that she went to the emergency room at UF Health Springhill around Noon on September 27, where they examined her arm, took her vitals, and conducted x-rays showing a "deep contusion of the right arm." ECF No. 90-1 at 59–60, 67. Plaintiff said she suffered a direct injury to her right forearm that affected her right hand, where she had not previously been injured. *Id.* at 65. Plaintiff's next medical appointment was with her primary care physician at the Archer Family Practice. *Id.* at 68–69. She testified that she did not "seek any other medical treatment from any other provider between the time [she was] discharged from the hospital and the time [she] saw [her] primary care physician at Archer[.]" *Id.* at 69. After Plaintiff's appointment with her primary care physician, she attended eight weeks of occupational physical therapy for eight weeks at "the Orthopaedic Institute" with Dr. Paul Dell. *Id.* at 70–71.

Plaintiff testified that her only other experience with physical therapy was to treat injuries to her left knee that occurred before and after the "sink incident." *Id.* at 73. Plaintiff estimated that the former took place between 2010 and 2012 to treat a meniscus tear and that the latter took place in the summer of 2017, when she tripped on a cement barrier in a parking garage. *Id.* at 77–78. Plaintiff stated that the treatment for her 2017 injury was covered as a worker's compensation claim and that she did not recall having any other worker's compensation claims. *Id.* at 81.

Plaintiff also testified that she was receiving weekly medical bills for two surgeries related to her injury at Waffle House, *id.* at 86., and that she received only six weeks of short-term disability benefits from her employment at UF Health even though she was on medical leave (and deemed unable to work) from May 31, 2016, through August 24, 2016, and, again, from November 17, 2016, through April 18, 2017, *id.* at 89–91. Even after her surgeries, Plaintiff occasionally experienced "breakthrough pain" in her arm, causing her to miss about 20 days of work. *Id.* at 98. At the time of her deposition, Plaintiff was scheduled to consult with a doctor at Arm and Hand Specialties in Lakeland, Fla., for a second opinion on her injury. *Id.* at 94–96.

ECW's counsel also asked Plaintiff whether she had "ever been in any other accident, fall, car accident, slip and fall" other than a prior motor vehicle accident, her two knee injuries, and the September 27 sink incident. *Id.* at 100–101. Plaintiff answered no (clarifying that she could not remember any) and stated that she had not been to the emergency room other than to treat her injury at the Waffle House and her two knee injuries. *Id.* at 101. ECW's counsel, however, confronted Plaintiff with employment records that reflected injuries to Plaintiff's left upper shoulder socket (in 2013), to her right forearm (in 2007), to her hands (in 2004), to her neck and right shoulder (in 2002), to her left hand (in 1999), and to her neck (in 1997). *Id.* at 133–38.

ECW's investigation of Plaintiff's negligence claims revealed additional information that was inconsistent with her deposition testimony. For starters, on September 29, 2015, Plaintiff inexplicably fell forward in a hospital hallway (at work) onto her left knee. ECF No. 92-4. That same day, she sought treatment at the UF Health ("Shands") emergency room. ECF No. 92-5. Plaintiff advised her treating physician assistant that she fell and complained of an "aching" and "throbbing" pain in her left knee, affecting her ability to bear weight. *Id.* at 2. Her medical records reflect that she did not have "other complaints at [that] time" and did not mention

the sink incident from only two days earlier.  *Id.*  The only reference to the sink incident is in the review of her radiology examination history.  *Id.* at 6.

As Plaintiff testified, she visited the Archer Family Practice (or "Archer Family Health Care") on September 30.  ECF No. 92-6.  The medical records state that she only reported going to the emergency room on the previous day for her fall at work, not on September 27, and that her "[c]hief [c]omplaint" was her elevated blood pressure.  *Id.* at 1–2.  Additionally, a physical examination did not demonstrate any abnormalities, enlargement, or tenderness in her right arm.  *Id.* at 5.  Plaintiff went to the UF Health Clinic the same day for a follow-up assessment from her September 29 fall.  ECF No. 92-7.  This time, her "[c]hief [c]omplaint" was for injuries to her left knee and right elbow "due to a fall on 9/29/15 during working hours."  *Id.* at 1.  Plaintiff had a similar visit to the UF Health Clinic on October 2, when she, again, failed to mention the sink incident.  ECF No. 92-8 at 1.

Four days later, on October 6, Plaintiff reported to the UF Health Department of Orthopaedics for an "initial evaluation of her [r]ight [a]rm" as a result of the sink incident.  *Id.* at 3.  And on October 9, Plaintiff returned to the UF Health Clinic for a follow-up examination of her knee from her September 29 fall, during which she was wearing a lace-up brace on her

wrist and forearm and mentioned the sink incident for the first time. *Id.* at 10.

As ECW explains in the instant motion, Plaintiff continued to receive contemporaneous treatment for her left knee and right arm injuries. ECF No. 92 at 10–11. Plaintiff stated in her deposition that this resulted in medical bills she did not pay. ECW served an interrogatory on Plaintiff asking her to identify "each item of expense or damage, other than loss of income or earning capacity, that Plaintiff claims to have incurred, as a result of the incident described in the Complaint[.]" ECF No. 92-14 at 2. Plaintiff responded by producing her medical bills as "all available medical expenses." *Id.* This included her visits to the emergency room at UF Health Springhill on September 29, *id.* at 53, to the Archer Family Practice on September 30, *id.* at 5, to the UF Health Clinic on September 30 and October 2, *id.* at 33, and to the UF Health Department of Orthopaedics on October 6, October 19, November 23, 2015, as well as on February 1, March 7, and May 31, 2016, *id.* at 33, 35–36. Plaintiff, however, already submitted the above-mentioned bills to her worker's compensation carrier to obtain recovery for her September 29 fall. ECF Nos. 92-11, 92-12. Her carrier authorized payment for Plaintiff's treatment during her September 30 and October 2 visits. ECF No. 92-11 at 2, 4.

8

In the same vein, ECW conducted additional discovery to determine

Plaintiff's supposed lost wages.  ECW learned that Plaintiff failed to

disclose disability benefits she received in 2016 as a result of her

September 29 fall.  ECF No 92-15.  Moreover, on December 28, 2018,

Plaintiff answered an interrogatory from ECW by stating that she was

terminated from the University of Florida as a result of her injury.  ECF No.

92-16 at 8.  Plaintiff amended her answer on February 27, 2019, to state

only that she "missed approximately nine (9) months of work" and "only

received partial benefits for approximately three (3) months during and

following [her] second surgery."  ECF No. 92-18 at 3.  ECW verified in May

2019 that Plaintiff is still employed by the University of Florida Clinical and

Translational Science Institute and able to perform her job.  ECF No. 92-17.

Lastly, ECW attempted to obtain discovery from a corporate

representative of Plaintiff's employer but was (at first) unsuccessful.  On

April 16, 2019, process server Nicole Romero attempted to serve ECW's

deposition subpoena, pursuant to Federal Rule of Civil Procedure 30(b)(6),

on the University of Florida Clinical and Translational Science Institute.

ECF No. 92-21.  The return of service reflects that the subpoena was

served on Plaintiff, "who stated [she was] authorized to accept service for

[the] University of Florida[.]"  *Id.*  ECW obtained an affidavit from Plaintiff's

employer on May 14, 2019.  ECF No. 92-17.

## II.  LEGAL STANDARD

It is well established that part of a federal court's inherent authority to

control proceedings is the power to impose reasonable and appropriate

sanctions (including dismissal).  *Martin v. Automobili Lamborghini*

*Exclusive, Inc.*, 307 F.3d 1332, 1335 (11th Cir. 2002).[2]  Consistent with the

Supreme Court's warning to exercise this authority "with restraint and

discretion," *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991), the

Eleventh Circuit has made clear that "[t]he key to unlocking a court's

inherent power is a finding of bad faith."  *Purchasing Power, LLC v.*

*Bluestem Brands, Inc.*, 851 F.3d 1218, 1223 (11th Cir. 2017).  Although the

term "bad faith" is nebulous, it may take several forms in litigation:

> First, bad faith may be found where the court finds that a fraud
> has been practiced upon it, or that the very temple of justice has
> been defiled.  Second, bad faith may be found where a party
> delays or disrupts the litigation, or hampers the enforcement of a

---

[2] Even the most cursory review of Supreme Court precedent reveals that this inherent authority is nearly as old as the federal judiciary itself.  *See, e.g.*, *Anderson v. Dunn*, 19 U.S. 204, 227 (1821) ("Courts of justice are universally acknowledged to be vested, by their very creation, with power to impose silence, respect, and decorum, in their presence, and submission to their lawful mandates, and, as a corollary to this proposition, to preserve themselves and their officers from the approach and insults of pollution."); *United States v. Hudson*, 11 U.S. 32, 34 (1812) ("Certain implied powers must necessarily result to our Courts of justice from the nature of their institution[,]" and these powers "cannot be dispensed with in a Court, because they are necessary to the exercise of all others[.]").

court order.  Third, the Eleventh Circuit has stated that bad faith
may be found where an attorney knowingly or recklessly raises
a frivolous argument or argues a meritorious claim for the
purpose of harassing an opponent.

*Barash v. Kates*, 585 F. Supp. 2d 1347, 1362 (S.D. Fla. 2006) (internal

citations omitted).

A finding of fraud on the court, however, is reserved for "'only the

most egregious misconduct, such as bribery of a judge or members of a

jury, or the fabrication of evidence by a party in which an attorney is

implicated[.]'"  *Patterson v. Lew*, 265 F. App'x 767, 768 (11th Cir. 2008)

(quoting *Rozier v. Ford Motor Co.*, 573 F.2d 1332, 1338 (5th Cir. 1978)[3]).

There must be clear and convincing evidence of an "unconscionable plan

designed to improperly influence the court in its decision."  *Johnson v. Law

Offices of Marshall C. Watson, PA*, 348 F. App'x 447, 448 (11th Cir. 2009);

*see also Aoude v. Mobil Oil Corp.*, 892 F.2d 1115, 1118 (1st Cir. 1989) ("A

'fraud on the court' occurs where it can be demonstrated … that a party has

sentiently set in motion some unconscionable scheme calculated to

interfere with the judicial system's ability impartially to adjudicate a matter

by improperly influencing the trier or unfairly hampering the presentation of

---

[3] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the
Eleventh Circuit adopted as precedent the decisions of the former Fifth Circuit decided
prior to October 1, 1981.

the opposing party's claim or defense.").  False statements in affidavits, depositions, and sworn statements do not constitute bad faith unless "there is other evidence in the record indicating that the statements were made for a harassing or frivolous purpose."  *Olivas v. A Little Havana Check Cash, Inc.*, 324 F. App'x 839, 842 (11th Cir. 2009) (alterations adopted).

Alternatively, Federal Rule of Civil Procedure 41(b) empowers courts with the authority to dismiss an action when a plaintiff fails to abide by a court order or court rules.  *Zocaras v. Castro*, 465 F.3d 479, 483 (11th Cir. 2006); *see also* Fed. R. Civ. P. 41(b) ("If the plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it.").  To dismiss a case under Rule 41(b), there must be "a clear record of delay or willful contempt and a finding that lesser sanctions would not suffice."  *Goforth v. Owens*, 766 F.2d 1533, 1535 (11th Cir. 1985); *see also Betty K Agencies, Ltd. v. M/V MONADA*, 432 F.3d 1333, 1339 (11th Cir. 2005) ("Our case law has articulated with crystalline clarity the outer boundary of the district court's discretion in these matters: dismissal with prejudice is plainly improper unless and until the district court finds a clear record of delay or willful conduct and that lesser sanctions are inadequate to correct such conduct.").

## III.  DISCUSSION

In the instant motion, ECW does not mince words.  ECW accuses Plaintiff of "willful misconduct in this litigation process" by "sentiently setting in motion an unconscionable scheme calculated to interfere with the judicial system's ability to fairly adjudicate this matter."  ECF No. 92 at 1.  Namely, it contends that dismissal is warranted because Plaintiff: (1) concealed material and relevant information during discovery (*e.g.*, her September 29 fall, her corresponding worker's compensation claim, relevant portions of her medical history, and her receipt of indemnity benefits she received for lost wages); (2) produced medical treatment bills during discovery in this case that she previously submitted to her worker's compensation carrier, and (3) interfered with the Court's subpoena process.  *Id.* at 1–2, 12–24.

As mentioned at the outset, these allegations are disturbing.  To the same extent the Court will never condone objectively false sworn testimony, evasive (and even slapdash) discovery responses, which often present a "flagrant affront to the truth-seeking function of adversary proceedings."  *ABF Freight Sys., Inc. v. N.L.R.B.*, 510 U.S. 317, 323 (1994); *see also Hickman v. Taylor*, 329 U.S. 495, 501 (1947) (the modern civil discovery process provides parties the opportunity to "obtain the fullest possible knowledge of the issues and facts before trial"); *Malautea v.*

*Suzuki Motor Co., Ltd.*, 987 F.2d 1536, 1546 (11th Cir. 1993) ("The

discovery rules in particular were intended to promote the search for truth

that is the heart of our judicial system."); *Paul Rock Produced, LLC, v.

Evergreen Media Holdings, LLC*, No. 2:14-cv-499-FtM-PAM-MRM, 2018

WL 1858198, at *1 (M.D. Fla. Feb. 22, 2018) ("Litigation is the search for

the truth and discovery exists to uncover that truth."). What's more, it is

rarely excusable for a party to obstruct service of a discovery subpoena.

The problem for ECW, however, is that its claim of "fraud on the

court" is a bridge too far for this Court to cross. There is no evidence—let

alone clear and convincing evidence—that Plaintiff's conduct was willful,

such that she even intended to mislead ECW or obstruct the discovery

process. *See Deshon v. Circle K Stores, Inc.*, No. 17-cv-80482, 2018 WL

566840, at *2 (S.D. Fla. Jan. 26, 2018) ("[T]he mere existence of

inconsistent testimony does not warrant dismissal without prejudice. Courts

require evidence of willful misconduct."); *Hughes v. Matchless Metal Polish

Co.*, No. 2:04-cv-475-FtM-29DNF, 2007 WL 2774214, at *3 (M.D. Fla. Sept.

24, 2007) ("Dismissal because of discrepancies between a party's

discovery responses and the evidence developed by the opposing party in

its investigation should be made only on a clear showing of egregious

conduct."). To hold otherwise would turn discovery into a game of "gotcha,"

14

where the plaintiff's failure to answer correctly an interrogatory or deposition question—no matter how relevant—would be fatal to her claims.

Indeed, the Court can easily fathom innocent explanations for some of Plaintiff's conduct because there is no evidence to the contrary. For example, Plaintiff's failure to disclose injuries to her right arm that occurred in 2004 and 2007, ECF No. 92 at 21, or the exact amount of her indemnity benefits, *id.* at 17–18, was more likely the result of a lapse in Plaintiff's memory than a deliberate omission. *See Bender v. Tropic Star Seafood, Inc.*, No. 4:07-cv-438-SPM, 2008 WL 4097602, at *3 (N.D. Fla. Sept. 3, 2008) (there is no evidence of a party's deception or obstruction in discovery when "[m]any of the factual inconsistencies can be explained by misunderstanding the specific question, innocent forgetfulness or nervousness common to witnesses at depositions"). Moreover, the charge that Plaintiff sought to obtain "double recovery" in this case and from her worker's compensation carrier rings hollow because the carrier denied payment as to most of the overlapping bills. ECF No. 92-11.

As to ECW's other allegations—pertaining to Plaintiff's September 29 fall and service of the Rule 30(b)(6) subpoena—there is no suggestion "that a fraud has been practiced upon [the Court], or that the very temple of justice has been defiled." *Barash*, 585 F. Supp. 2d at 1362. To be clear,

15

fraud between the parties is not fraud upon the court.  *Brown v. S.E.C.*, 644

F. App'x 957, 959 (11th Cir. 2016); *see also Bassett v. Wal-Mart Stores*

*East, LP*, No. 18-61984-CIV, 2019 WL 4691824, at **1–2 (S.D. Fla. July

10, 2019) ("Neither perjury nor the proffering of misrepresentations to the

opposing party typically constitutes fraud on the court.  Instead, the plaintiff

must direct his actions to the court—either by submitting fabricated

evidence or else by concealing the true party in interest." (internal citations

omitted)).  Nor is there a meaningful claim that ECW will not "gain[] access

to an impartial system of justice."  *S.E.C. v. ESM Grp., Inc.*, 835 F.2d 270,

274 (11th Cir. 1988).  In fact, ECW has not been materially prejudiced

because its independent investigation discovered Plaintiff's conduct and

discrepancies well in advance of the close of discovery and, more

importantly, a trial.  *Fahmy v. School Bd. of Miami-Dade Cty.*, No. 09-

23608-CIV, 2011 WL 13269611, at *5 (S.D. Fla. July 15, 2011); *Bender*,

2008 WL 4097602, at *4; *Bryant v. Troutman*, No. 3:05-cv-162-J-20MCR,

2006 WL 1640484, at *2 (M.D. Fla. June 8, 2006).

    ECW cites 11 federal and Florida cases in support of dismissal.  ECF

No. 92 at 30–32.  Notably, the federal cases pre-date the Eleventh Circuit's

more developed discussions of the inherent authority to dismiss a case for

fraud on the court, which the Court applies here.  In any event, none of

16

them are binding and each is factually distinguishable from the present

record.  Plaintiff did not conceal extensive criminal convictions, *In re Amtrak*

*"Sunset Ltd." Train Crash*, 136 F. Supp. 2d 1251, 1256–57 (S.D. Ala.

2001), offer fabricated evidence central to her claim, or perjure herself

during a court hearing, *McDowell v. Seaboard Farms of Athens, Inc.*, No.

95-609-CIV-ORL-19, 1996 WL 684140, at *4 (M.D. Fla. 1996).  As one

federal court recently recognized, "when faced with reasonably analogous

factual scenarios, federal courts in this Circuit have routinely refused to

dismiss a plaintiff's complaint for fraud on the court."  *Bassett*, 2019 WL

4691824, at *3.

    ECW asks, in the alternative, for the Court to impose lesser sanctions

against Plaintiff to deter future misconduct.  ECF No. 92 at 33–34.

However, four of the requested "sanctions" pertaining to the admissibility or

preclusion of evidence at trial would be better addressed at a later juncture

rather than on the instant motion.  And ECW's request for an award of

"attorneys' fees and costs [it] has incurred as a result of Plaintiff's fraud" is

unavailing because, for the reasons discussed above, ECW has failed to

prove fraud on the court or bad faith.  *See Filippova v. Mogilevsky*, No. 18-

80044-CIV, 2019 WL 1060447, at *4 n.3 (S.D. Fla. Mar. 6, 2019) ("[T]he

only way that Movants can recover reasonable attorney's fees and costs is

if the Court finds that there was a fraud on the court or that Mr. Rosen and/or Mr. Kaplan have acted in bad faith."); *Quantum Comm. Corp. v. Star Broad., Inc.*, 473 Supp. 2d 1249, 1268 (S.D. Fla. 2007) ("The Supreme Court has held that sanctions such as dismissal and attorney's fees are within a court's inherent power *when a party's conduct evidences bad faith and an attempt to perpetrate a fraud on the court.*" (emphasis added)).

Finally, ECW offers two fleeting citations to the Court's authority to dismiss an action under Rule 41(b).  ECF No. 92 at 1, 24.[4]  This rule-based argument for dismissal does not fare any better.  ECW does not specify what court order or rule that Plaintiff violated, *Tarasewicz v. Royal Caribbean Cruises, Ltd.*, No. 14-CIV-60885, 2016 WL 3944176, at *7 (S.D. Fla. Feb. 9, 2016), *report and recommendation adopted*, 2016 WL 3944178, at *1 (Mar. 17, 2016), and, as explained above, there is not "a clear pattern of delay or willful contempt" by Plaintiff, *Betty K Agencies, Ltd.*, 432 F.3d at 1339.

---

[4] Typically, the Court will not entertain undeveloped arguments by counseled parties.  *See N.L.R.B. v. McClain of Ga., Inc.*, 138 F.3d 1418, 1422 (11th Cir. 1998) ("Issues raised in a perfunctory manner, without supporting arguments and citation to authorities, are generally deemed waived."); *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) ("[T]he onus is upon the parties to formulate arguments.").

In sum, ECW's motion is due to be denied.  No matter how reprehensible or alarming the allegations of Plaintiff's conduct during discovery may be, they do not amount to fraud on the court.

## IV.  CONCLUSION

Accordingly, it is respectfully **RECOMMENDED** that ECW's Renewed Motion to Dismiss for Fraud or, Alternatively, Motion for Sanctions, ECF No. 92, should be **DENIED**.

**IN CHAMBERS** this 29th day of January 2021.

*s/Gary R. Jones*

GARY R. JONES
United States Magistrate Judge

## NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof.  Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.  A copy of objections shall be served upon all other parties.  If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**